Michael C. Fallon, SBN 088313
Attorney at Law
100 E Street, Suite 219
Santa Rosa, California 95404
Telephone: (707) 546-6770
Facsimile: (707) 546-5775
mcfallon@fallonlaw.net

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
(Santa Rosa Division)

In Re                                          Case No. 10-13447

Sonoma Vineyards Estate, LLC                   Chapter 11

         Debtor.
_____/

DISCLOSURE STATEMENT
IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION
(August 25, 2011)

YOU ARE BEING SENT THIS DISCLOSURE STATEMENT BECAUSE YOU ARE A
CREDITOR OF SONOMA VINEYARDS LLC. THIS DOCUMENT DESCRIBES A PLAN OF
REORGANIZATION WHICH, WHEN CONFIRMED BY THE BANKRUPTCY COURT, WILL
GOVERN HOW YOUR CLAIM WILL BE PAID. THE MEMBERS OF THE DEBTOR, URGE
YOU TO REVIEW THE DISCLOSURE STATEMENT AND THE PLAN OF
REORGANIZATION CAREFULLY BEFORE VOTING ON THE PLAN.

DATED: August 25, 2011                    /s/ Michael C. Fallon

                                          _____
                                          Michael C. Fallon attorney for
                                          Sonoma Vineyards Estate LLC

# I.

## Introduction

On September 7, 2010, Sonoma Vineyards Estate LLC ("the Debtor") filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the Northern District of California, Santa Rosa Division. This Disclosure Statement has been prepared by the Debtor in connection with the Plan of Reorganization proposed by it to comply with the provisions of the Bankruptcy Code that require the submission of information necessary for creditors to arrive at an informed decision in exercising their rights to vote for acceptance or rejection of the Debtor's Plan of Reorganization.

### A. Repayment of Creditors/Treatment of Equity Holders

The proposed plan for Sonoma Vineyard Estates LLC is to either sell the entirety or to take the two parcels that are comprised of 58.5 acres and process an application for a 17 estate lot subdivision so that the property can be sold to a developer which in turn would result in all creditors being paid in full and possibly some of the approximately $3,000,000 invested by the members being returned to them.

### B. Creditors Allowed to Vote: Deadline

Creditors who wish to vote on the Plan should review this Disclosure Statement and the Plan, complete the enclosed ballot and return it to the Law Offices of Michael C. Fallon, 100 E Street, Suite 219, Santa Rosa, California 95404, on or before the date set for the return of ballots as provided in the order approving this disclosure statement. Creditors who hold allowed claims are entitled to vote to accept or reject the Plan. Ballots received by counsel after the date set forth above will not be counted in determining whether the Plan should be confirmed. Even though a creditor may choose to not vote or may vote against the Plan, all creditors will be bound by the terms of the Plan if the Plan is accepted by the requisite majority in each class of creditor and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest for voting purposes does not necessarily mean the claim will be allowed or disallowed for purposes of distribution under the Plan. Any claim on which an objection has been or will be made will be

allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

C. Confirmation of the Chapter 11 Plan

The Bankruptcy Court will hold a hearing in the courtroom of the Honorable Alan Jaroslovsky, United States Bankruptcy Judge, 99 South E Street, Santa Rosa, California to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. The date of the hearing is contained in the order approving this Disclosure Statement.

For the Plan to be deemed accepted by a class of creditors the Plan must be accepted by creditors that hold at least two-thirds in dollar amount and more than one half in total number of allowed claims within that class. For purposes of this calculation, only the claims of creditors actually voting on the Plan will be counted. Under certain circumstances described in 11 U.S.C. §1129(b), the Court may confirm a plan notwithstanding the rejection thereof by more than one third in amount or one half in number of creditors voting on the plan in any given class. The Plan Proponent intends to seek confirmation under 11 U.S.C. §1129(b) in the event any class of creditors rejects the Plan.

D. Lack of Objection to the Disclosure Statement

The lack of an objection to the Disclosure Statement by any creditor or equity holder does not, and will not, operate as a waiver of the creditor's right to raise any objections to confirmation of the Plan of Reorganization.

E. Representations in the Disclosure Statement

The Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without error, although reasonable efforts have been made to insure that the information contained herein is accurate, complete and free from error.

Except as otherwise noted all estimates and analysis with respect to the Debtor's assets, claims against the Debtor, property values, pending or anticipated litigation, are only the Debtor's best estimates taken from the Debtor's Schedule of Assets and Liabilities filed under penalty of perjury in this Chapter 11, and the Debtor cannot warrant that actual values, results,

and recoveries will, in fact, be consistent with this Disclosure Statement.

Any description of the terms of the Debtor's Plan is a summary only, and you are cautioned to review the terms of the Plan for significant details.

II.

## Background

Sonoma Vineyard Estates LLC was formed in 2006 to obtain approvals, develop and sell a fractional resort development that would be marketed and financed by Wyndham Worldwide in partnership with Sonoma Heritage Partners LLC. The approvals were almost completed in late 2008 when the financial crises erupted. Wyndham Worldwide's stock dropped from $36 a share to less than $3 and the company was forced to lay off over 10,000 employees and abandon the development due to their inability to make the agreed upon financial contributions.

The property has rare K zoning and in December 2009 an offer was made to sell the property to GMB Property Corporation for $8,800,000. This offer required the assumption of the loans with the first lender, Geneva Leasing, and the second lender, Charter Oak Bank. The purchaser was able to get approval from the second note holder to approve the assumption but could not reach an agreement with the first note holder, Geneva Leasing.

Faced with the loss of its only asset to foreclosure by Geneva Leasing, the chapter 11 was filed.

II.

## Significant Post Filing Events

Approximately 90 days into the case Geneva Leasing obtained relief from the automatic stay and in January of 2011, Geneva Leasing concluded its foreclosure and is now the owner of the development property. The Debtor has negotiated an agreement with Geneva Leasing that has the Debtor developing the property as a means of paying its creditors.

//
//
//

### III.

### Summary of Assets and Liabilities

<u>Assets</u>

The agreement with Geneva Leasing to develop the property.

<u>Liabilities</u>

| | |
|---|---|
| Geneva Leasing (deficiency claim) | |
| Charter Oak Bank | 998,000 |
| Riechers Spence Associates | 200,000 |
| vandertoolen Associates | 18,696 |
| Sonoma County Central Collections | 10,150 |
| Internal Revenue Service | 9,640 |
| Franchise Tax Board | 3,094 |

### IV.

### Classification of Claims and Interests

The following is a designation of the classes of claims and the class of interests provided for in this Plan. Administrative claims, priority tax claims, and priority wages claims of the kinds specified in Bankruptcy Code § 507(a)(2) and §507(a)(8) respectively, have not been classified and are excluded from the following classes in accordance with the provisions of §1123(a)(1) of the Bankruptcy Code. A claim or interest shall be deemed classified in a different class to the extent that any remainder of the claim or interest qualifies within the description of such different class. A claim is in a particular class only to the extent that the claim is an Allowed Claim in that class.

Class 1- Geneva Leasing
Class 2 - Charter Oak Bank
Class 3 - Riechers Spence Associates
Class 4 - Allowed Unsecured Claims
Class 5 - The Members

## V.

### Treatment and Provision for Non-Classified Claims

Each holder of an Allowed Claim of the kind specified in § 507(a)(1) and (a)(8) of the Bankruptcy Code, not otherwise separately classified herein, and the Office of the United States Trustee, shall receive on account of such claim cash equal to the allowed amount of such claim, unless such holder shall have agreed to a less favorable treatment. Payments on account of the Office of the United States Trustee shall be distributed on the Effective Date. Payments on account of the Office of the Internal Revenue Service and the State of California, if any, shall be paid in full, plus statutory interest, in sixty (60) equal monthly installments commencing the 15th day of the first month following the Effective Date, and continuing on the 15th day of each month thereafter until paid in full.

## VI.

### Summary and Implementation of the Plan

#### Summary

#### Sale

The Debtor is exploring the possible sale of development parcel with the intention of paying all creditors in full upon closing.

#### Development

The Sonoma County General Plan allows for a 22 lot residential subdivision on the two lots with APN numbers 142-042-020 and 142-042-021. Under the Sonoma County General Plan Use Policy LU-18t it states that if the existing golf course is abandoned on the 48.5 acre parcel then 15 residential homes may be placed on the parcel. The second parcel that is just less than 10 acres is allowed to be divided into two lots. Both adjacent property owners have consented to support this subdivision.

#### Implementation

The members of Sonoma Vineyard Estates LLC will advance fifty percent of the cost to the site planner, architect, engineer and planner to obtain the necessary approvals from Sonoma County for a tentative map on the estate lot subdivision that is described in the Disclosure

Case: 10-13447   Doc# 58   Filed: 08/30/11   Entered: 08/30/11 08:09:23   Page 5 of 9

Statement with Geneva advancing the other fifty percent pursuant to the terms of a confidential settlement agreement dated March 9, 2011.  The costs are to be repaid upon the sale of the property with the tentative map.

<u>Sale of the entirety</u>

| | | |
|---|---|---|
| Gross Sale Proceeds | $ | 8,500,000 |
| Less Sales costs 4% | ( | 340,000) |
| Closing Costs | ( | 20,000) |
| Net to the Estate | $ | 8,140,000 |

<u>17 Lot Subdivision</u>

| | | |
|---|---|---|
| 22 lots at $500,000 | $ | 11,000,000 |
| Cost of Sale (6%) | ( | 663,000) |
| Planning Final Map Costs | ( | 50,000) |
| Waste Treatment system | ( | 425,000) |
| Utility Stub Outs | ( | 250,000) |
| Road | ( | 350,000) |
| Net to the Estate | $ | 8,812,000 |

VII.

Satisfaction of Claims and Interests

The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court.  However, only those Claims allowed will receive distributions under the Plan. All Creditors and other parties in interest who have or assert Claims in any Class shall, upon Confirmation of the Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, are declared and shall be, for all purposes, upon the entry of the Order Confirming Plan, satisfied in full. All Impaired Classes of Claims shall receive the distributions set forth in the Plan on account of, and in complete satisfaction of,

all such Allowed Claims. Without limiting the foregoing, on the Effective Date, each Creditor shall be deemed to have waived, relinquished and released any and all of their rights, Claims, other than as provided for in the Plan.

VIII.

Alternative to the Plan

To arrive at a judgment on whether or not to vote for or against the Plan proposed by the Debtor, a Creditor or other party in interest needs to have an understanding of the consequences of what would happen if the Case was converted to Chapter 7.

When a Chapter 11 is converted to Chapter 7 a trustee is appointed who is given the task of liquidating assets that will, net of costs of sale and net of liens, allow for a meaningful distribution to the unsecured creditors. In this case, there would not be anyone to fund the $75k to subdivide the property and as such the value would not be there to pay the creditors as the debtor is proposing.

IX.

Executory Contracts and Unexpired Leases

There are no executory contracts or unexpired leases to either assume or reject (there is a cell phone tower lease).

X.

Tax Consequences

There should be no tax consequences to any class of creditors as a result of confirmation of the plan except those creditors who receive a distribution that may have previously written off the claim for tax purposes. As to those creditors there may be a recognizable gain when the claim is paid. Creditors are urged to consult with their own tax advisors.

XI.

1111(b) Election

An undersecured creditor may elect to have its claim treated as fully secured under section 1111(b)(2), meaning that a creditor relinquishes the right to vote and to share in the

distribution as an unsecured creditor. However, a class of claims may not make such election if (I) the interest on account of such claim of the holder of such claim in such property is of inconsequential value or (ii) the holder of a claim has recourse against the Debtor on account of such claim and such property is sold.

XII.

Conclusion

The plan provides for the development and sale of the property that will, if fully implemented, pay all creditors in full. The creditors are urged to support the plan.

Dated: August 25, 2011

*s/ Michael C. Fallon*

_____
Michael C. Fallon
Attorney for the Debtor